INSURANCE CO. OF NORTH AMERICA v. EASTON & McMAHON TRANSP. CO.[1]

(District Court, E. D. Pennsylvania.    November 8, 1899.)

COMMON CARRIERS—BILL OF LADING—EXCEPTED RISKS—DANGERS OF THE SEAS —BURDEN OF PROOF.

Where a common carrier assumes to deliver a cargo in good order, "the dangers of the seas only excepted," the failure to do so casts upon him the burden of proving that the loss was caused by the excepted risk; and, in the absence of satisfactory proof thereof, the court is justified in finding for the libelant, even if the cause of the disaster does not clearly appear.[2]

---

[1] Reported by Arthur G. Dickson, Esq., of the Philadelphia bar.

[2] As to loss or damage by perils of the sea, see note to The Dunbritton, 19 C. C. A. 465.

In Admiralty.

The libel alleged that on October 8, 1897, the defendant, a common carrier from Baltimore to Philadelphia and elsewhere, received from the Montana Coal & Coke Company, a corporation of Maryland, doing business in Baltimore, 230 tons of Montana gas coal, to be delivered, "the dangers of the seas only excepted," to the Philadelphia Bureau of Gas, and issued a bill of lading to the said coal company showing the shipment upon the barge W. E. Weller, belonging to the said respondent; that the libelant underwrote the coal upon this voyage; that on October 9, 1897, the barge left Baltimore, being placed in a fleet with four others, two in front and the other three lashed together behind, the Weller on the starboard side; that all the fleet were loaded with coal, and were towed by the tug Stella, employed by the respondent; that when in the vicinity of Poole's Island, below the mouth of the Susquehanna river, the barge Weller began to leak, and continued to do so until she sank, in about 14 feet of water, a mile below Turkey Point, the cargo being a total loss; and that the libelant paid the amount of the insurance to the Montana Coal & Coke Company. The loss was alleged to have been caused by the negligence of those in charge of the tug Stella, and by the unseaworthy condition of the barge W. E. Weller. The respondent's answer denied all negligence, and alleged that the loss was caused by a heavy storm of wind and heavy seas, which caused the W. E. Weller to pound against the barge next to it, and started the leak which proved fatal.

The evidence showed quite conclusively that the weather had not been at all unusual, and that the pounding of one barge against another had not been out of the ordinary. It was not perfectly clear on the question of the seaworthiness of the Weller. Decree for the libelant.

Francis S. Laws and John F. Lewis, for libelant.

J. W. Bayard and John G. Johnson, for respondent.

McPHERSON, District Judge. The respondent is a transportation company engaged in the business of carrying freight by water between the cities of Baltimore and Philadelphia. In October, 1897, it received at Baltimore upon one of its barges, the W. E. Weller, 230 tons of coal belonging to the Montana Coal & Coke Company. The coal was consigned to Philadelphia, and the bill of lading bound the respondent to deliver the cargo in good order, "the dangers of the seas only excepted." The barge was one of five that were lashed together in tow of a tug; two being first, and three, of which the Weller was one, being second. The tow left Baltimore in the afternoon, bound east across the Chesapeake Bay, and during the night encountered a fresh breeze that caused the barges to roll somewhat, and to bump against each other with some degree of force. The wind was not violent, and there was nothing about the weather or the motion of the boats to suggest danger to the men on board of the barge. In the morning the Weller was discovered to be leaking, and efforts were made to pump her out. When these were found to be unavailing, the tug tried to tow her into shallow water, but before this point was reached the barge sank, and the coal became a total loss. The tug was not in fault, either during the night or afterwards. The libelant, who had insured the coal, paid the loss on November 27, 1897, and brings this action for reimbursement.

The respondent agreed to deliver safely, the dangers of the seas alone excepted, and must, therefore, assume the burden of proving that the loss was occasioned by a peril of the excepted class. If it

has failed to prove that fact, it must be held liable, even if the cause of the disaster does not clearly appear. The respondent averred that a violent wind brought about the loss by causing the barges to bump together, and thus starting a leak in the Weller that could not be controlled. In my opinion, the evidence fails to establish the averment. Whatever may be the test of a peril of the seas, this much, at least, may be safely said: The injurious force must be unusual; it must be out of the ordinary run of events,—such a violent happening as is not fairly to be expected. Justice Story's definition in The Reeside, Fed. Cas. No. 11,657, is well known:

"The phrase, 'danger of the seas,' whether understood in its most limited sense, as importing only a loss by the natural accidents peculiar to that element, or whether understood in its more extended sense, as including inevitable accidents upon that element, must still in either case be clearly understood to include only such losses as are of an extraordinary nature, or arise from some irresistible force or some overwhelming power, which cannot be guarded against by the ordinary exertions of human skill and prudence."

This was approved in Garrison v. Insurance Co., 19 How. 312, and in Richards v. Hansen (C. C.) 1 Fed. 61. Another definition may be found in The Warren Adams, 20 C. C. A. 486, 74 Fed. 415:

"No loss which is the result of ordinary wear and tear, or a necessary consequence of the employment of the vessel in the usual course of navigation, is a loss by 'perils of the seas.' That term may be defined as denoting 'all marine casualties resulting from the violent action of the elements, as distinguished from their natural, silent influence, upon the fabric of the vessel; casualties which may, and not consequences which must, occur.' "

Tried by either of the tests found in these citations, the evidence falls far short of proving the existence of a wind of an "extraordinary nature,"—such a wind as might fairly be described as an "irresistible force" or an "overwhelming power," or even such a wind as might be described as "violent." At the most, there was a moderate breeze, not stronger than might be expected upon any voyage in the Chesapeake Bay during the month of October; and, if the Weller was injured by bumping against her consorts while such a wind was blowing, she was injured by an ordinary, and not by an extraordinary, accident of the voyage. If the loss was not due to an injury then received, it is unimportant to inquire what may have done the harm; for, as already stated, the bill of lading binds the carrier to deliver safely in every other event than the intervention of some peril of the sea. Whether caused by the breeze, therefore, or by some undisclosed agency, the loss does not appear to have been occasioned by a danger of the excepted class. The result is that the ordinary liability of a common carrier remains.

A decree will be entered in favor of the libelant for $460, with interest from November 27, 1897, and costs.